IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILSON GORRELL,<br>       Plaintiff,<br>v.<br>THOMAS C. SNEATH, et al.,<br>       Defendants. | Case No.: 1:12-cv-00554-AWI-JLT<br><br>**ORDER REQUIRING PLAINTIFF TO EITHER NOTIFY THE COURT OF HIS WILLINGNESS TO PROCEED ON COGNIZABLE CLAIMS OR FILE A FIRST AMENDED COMPLAINT** |

  Plaintiff Wilson Gorell ("Plaintiff") is an inmate currently incarcerated at Federal Satellite Low ("FSL") in Jesup, Georgia. (Doc. 3). On March 9, 2012, Plaintiff filed a diversity action pursuant to 42 U.S.C. §1331 in propia persona against a California domiciled company, National Toxicology Laboratories, Inc. ("NTL") and two of its employees, Thomas Sneath and Hasmukh Shah (collectively referred to as "NTL Defendants").[1]

  Plaintiff complains that the medication he was taking to treat his human immunodeficiency virus ("HIV") caused his urine specimen for the screening test he took on or about June 13 to result as positive for cannabinoids. (Doc. 1 at 1). Plaintiff contends that NTL Defendants "failed to adhere to strict and exacting requirements for testing before certifying a

---

[1] Plaintiff claims to be a party to a Bivens action and a Habeas action in the Georgia federal court system based on the same underlying facts of this case. However, only the diversity case against the NTL Defendants was transferred to this Court.

1

specimen as positive for illicit drug use" and incorrectly informed FSL that his medication had no effect on the positive result.  (Id. at 3.)  Plaintiff's complaint alleges several torts including negligence, intentional infliction of emotional distress, breach of contract, breach of fiduciary duty, defamation, libel, slander, and personal injury.  (Doc. 1).  For the reasons set forth below, the Court finds that Plaintiff has stated cognizable claims for negligence and defamation only and orders Plaintiff to notify the Court of his willingness to proceed on the cognizable claims or file a First Amended Complaint.

**I.  MOTION TO PROCEED IN FORMA PAUPERIS**

Plaintiff filed an application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915 on March 9, 2012 in the Unites States District Court for the Southern District of Georgia.  (Doc. 2).  In support of this motion, Plaintiff asserts that his only source of income is $150-$200 he receives for commissary items.  Id.  His current balance on his prisoner account at FSP is $61.92 and over the last six months, his account averaged $150 per month.

Based upon the declaration submitted, the Court finds that Plaintiff has satisfied the indigency requirements of 28 U.S.C. § 1915 and that Plaintiff is unable to pre-pay the costs of commencing this action.  Accordingly, Plaintiff's IFP motion is GRANTED.

**II.  THE COURT IS REQUIRED TO SCREEN PLAINTIFF'S COMPLAINT**

The Court is required to review a case filed IFP.  28 U.S.C. §1915(a); 28 U.S.C. 1915(e).  The Court must review the complaint and dismiss the action if it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915 (e)(2)(B); *see* Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987 (citing Franklin v. Murphy, 745 F. 2d 1221, 1228 (9th Cir. 1984)).  If the Court determines that the complaint fails to state a claim, leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment.  Lopez v. Smith, 203 F.3d 1122, 1127-1128 (9th Cir. 2000) (en banc).

**A.  Rule 8(a)**

Section 1983 complaints are governed by the notice pleading standard in Federal Rule of Civil Procedure 8(a).  The complaint must give fair notice and state the elements of the plaintiff's

claim plainly and succinctly.  Jones v. Community Redevelopment Agency,  733 F.2d 646, 649 (9th Cir. 1984).

> In Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009), the Court observed,
> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. [Citations]. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [Citation]. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." [Citation].

The Court further clarified that,

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Citation]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation]. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation]. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id.

The Court instructed, "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.  Id. at 1950.  However, the conclusions contained in the pleading "are not entitled to the assumption of truth." Id.

### B. Choice of Law

The Court must apply California's choice of law rules in this case, a diversity jurisdiction case: "It is well-settled that in diversity cases federal courts must apply the choice-of-law rules of the forum state." Estate of Darulis v. Garate, 401 F.3d 1060, 1062 (9th Cir. 2005). The California choice of law rule is a three-part governmental interest test. First, the Court assesses whether the foreign state law actually differs from the law of California. If it does, the Court then "considers each state's interest in having its own law applied to this case to determine whether there is a 'true conflict' between their interests." Id.  If each state has a legitimate interest, the Court compares the extent to which each state's interests will be impaired if the other state's law is applied. Id.

1  (citations omitted).  *See also* <u>North American Asbestos Corp. v. Superior Court</u>, 180 Cal. App. 3d

2  902, 905, 225 Cal. Rptr. 877 (Cal. Ct. App. 1986).  <u>ABM Indus. v. Zurich Am. Ins. Co.</u>, 2006

3  U.S. Dist. LEXIS 67884, 29-30 (N.D. Cal. Sept. 11, 2006).  Since the laws of both California and

4  Georgia do not seem to differ in the general elements of the causes of action alleged by Plaintiff,

5  the Court need not analyze each state's interest in applying their law at this time.

## III.    ALLEGATIONS OF THE COMPLAINT

Plaintiff alleges that NTL entered into a contract to perform drug testing with the Federal Bureau of Prisons ("FBOP").  (Doc. 1 at 8).  Plaintiff contends NTL is a SAMHSA/DHHS certified laboratory and is therefore obligated to adhere to all HHS regulations regarding drug testing.  (<u>Id</u>.)

NTL reported that it received a urine specimen labeled B0P 0001172242 on June 14, 2011 that had been collected by FSL Jesup staff on June 13, 2011 and sent to California for testing.[2]  In a report dated 6/17/2011, NTL defendant Shah certified that Specimen No: BOP 0001172242, collected on 6/13/2011 and allegedly belonging to Plaintiff, tested positive for "Cannabinoids THC Metabolite"  "Confirmed GC/MS."

Plaintiff alleges that NTL defendants did not adhere to several aspects of the contract with the FBOP: 1) Defendants' report did not indicate "the concentration level (ng/ml) of cannabinoids THC detected in the specimen or the cut off level set by the contract with the FBOP"; 2) Defendant did not indicate that its drug testing equipment was properly calibrated and verified on a daily basis; 3) Defendants did not produce evidence that the gas chromatograph was printed out for each calibrator, control, sample or that all data was reviewed by the analyst and a second reviewer; 4) that the transcription of the results from the printout to the report sent to FSL Jesup were correct; 5) that a proper chain of custody was followed; and 6) that the persons who conducted the test were properly trained and certified to do so.  (<u>Id</u>. at 9).

Plaintiff alleges that he raised the issue, that the Atripla he was taking caused a false-

---

[2] Plaintiff claims there is some discrepancy in the dates reported by NTL.  He claims NTL defendants reported receiving the specimen at issue on June 13, 2011, but also reported it as collected on June 13, 2011.

4

positive, with both NTL and FSP. (Doc. at 4, 17 and 18; Doc. 1-1 at 5). When DTL Defendant Sneath was contacted by FSP DHO Schelder, Defendant Sneath confirmed that Atripla would not provide a false-positive result for Cannabinoids/THC and DTL intended to stand by the result. (Id.) As a result of the report by NTL to FSL Jesup, Plaintiff was placed in disciplinary segregation and remained there for approximately 45 days. (Doc. 1 at 12). While in segregation, he contends he was denied his medications. (Id.) Thus, his health worsened. Plaintiff contends that based solely upon NTL's report, he was found guilty of illicit drug use, sanctioned with a loss of forty days good-time credit, expelled from the FBOP residential drug abuse program (which would have provided him with a 12-month sentence reduction), lost all visits from friends and family for one year, and lost visits with all persons except immediate family. (Id.) Plaintiff contends he was then required to undergo bi-monthly/monthly drug tests for the next 2 years. (Id.) He further contends that as a result of NTL's false allegations, Plaintiff's placement in a "lesser security facility or halfway house in now in jeopardy." (Id.)

## IV.   DISCUSSION

### A.   Plaintiff's First Cause of Action for Negligence, Breach of Contract, and Intentional Infliction of Emotional Distress.

#### 1.   Plaintiff Has Stated a Cognizable Claim for Negligence Against NTL Defendants.

California law and Georgia law are identical with respect to negligence claims. *See* Johnson v. Am. Nat'l Red Cross, 276 Ga. 270, 272 (Ga. 2003) (explaining "[i]t is well established that to recover for injuries caused by another's negligence, a plaintiff must show four elements: 'a duty, a breach of that duty, causation and damages'" and citing Royal v. Ferrellgas, 254 Ga. App. 696, 698 (1) (a) (563 S.E.2d 451) ) (2002)); and John B. v. Superior Court, 38 Cal. 4th 1177, 1188 (Cal. 2006) (explaining that to prevail in an action for negligence, the plaintiff must demonstrate that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach proximately caused the plaintiff's injuries and citing Wiener v. Southcoast Childcare Centers, Inc. (2004) 32 Cal.4th 1138, 1145 [12 Cal. Rptr. 3d 615, 88 P.3d 517].)

Since the law in the two forums does not differ, the Court need not analyze the choice of

1  law issue any further.  Plaintiff asserts that NTL was the laboratory responsible for analyzing the
2  urine sample given by him on or about June 13, 2011.  He alleges NTL's report of his urine
3  specimen was not correct because NTL either improperly determined that that Plaintiff's Atripla
4  medication did not cause a false-positive or because NTL failed to follow required protocols.
5  Plaintiff's Complaint also sets forth the specific harms he allegedly suffered harm as a result of
6  NTL's report.  Based upon these allegations, Plaintiff has alleged sufficient facts to state a
7  cognizable claim for negligence against all NTL Defendants.

**2.    Plaintiff Fails to State Facts Sufficient to State a Claim for Breach of Contract.**

10  Plaintiff has alleged that NTL contracted with the FBOP to conduct drug testing services
11 for various FBOP facilities, including FSP where Plaintiff is housed.  (Doc. 1 at 1).  Thus,
12 Plaintiff is not a party to the contract with NTL and would only be able to proceed on a breach of
13 contract claim if he were considered a third party beneficiary.
14  California and Georgia law seem to agree that in order to qualify as a third party
15 beneficiary, Plaintiff would need to plead and prove that the contract between NTL and the FBOP
16 was made for Plaintiff's benefit and whether the intent to do so appears in the language of the
17 agreement.  In Martin v. Bridgeport Community Assn., Inc., 173 Cal. App. 4th 1024, 1034 (Cal.
18 App. 2d Dist. 2009) the California Appellate court explained that in order to qualify as third party
19 beneficiaries, the plaintiffs were required to plead and prove that the agreement was made for
20 their benefit.  (Id. (citing Schonfeld v. City of Vallejo (1975) 50 Cal.App.3d 401, 420 [123 Cal.
21 Rptr. 669].)). The fact that a third party is incidentally named in the contract, or that the contract,
22 if carried out according to its terms, would inure to his benefit, is not sufficient to entitle him to
23 enforce it. (Id. (citing Jones v. Aetna Casualty & Surety Co. (1994) 26 Cal.App.4th 1717, 1724-
24 1725 [33 Cal. Rptr. 2d 291].) Under Georgia law, a third party beneficiary only has standing if it
25 clearly appears from the contract that it was intended for his benefit. See Danjor, Inc. v. Corp.
26 Constr., Inc., 272 Ga. App. 695, 697, 613 S.E.2d 218 (2005). The mere fact that he would benefit
27 incidentally from performance of the agreement is not alone sufficient. Warren v. Bank of Am.,
28 2011 U.S. Dist. LEXIS 55777, 6-8 (S.D. Ga. May 24, 2011).  Generally, "government contracts

1  that benefit members of the public are assumed to create incidental beneficiaries 'absent a clear
2  intent to the contrary.'" Zoher v. Chase Home Fin., 2010 U.S. Dist. LEXIS 109936, 2010 WL
3  4064798, at *5 (S.D. Fla. Oct. 15, 2010) (quoting Marks v. Bank of Am., N.A., 2010 U.S. Dist.
4  LEXIS 61489, 2010 WL 2572988, at *3 (D. Ariz. June 22, 2010).

5  Here, Plaintiff has not plead sufficient facts to demonstrate that he is a third party
6  beneficiary to the contract between NTL and the FBOP under either state's laws, nor does the
7  Court believe he will be able to plead such facts.   As a result, Plaintiff lacks standing to proceed
8  with a breach of contract cause of action against NTL.

### 3. Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress.

11  California case law describes the elements of a prima facie case for the tort of intentional
12  infliction of emotional distress as follows: (1) outrageous conduct by the defendant (2) the
13  defendant's intention of causing or reckless disregard of the probability of causing emotional
14  distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and
15  proximate causation of the emotional distress by the defendant's outrageous conduct. Cote v.
16  Henderson, 218 Cal. App. 3d 796, 805-806 (Cal. App. 2d Dist. 1990)

17  Similarly, the Georgia Court of Appeals, in Mears v. Gulfstream Aero. Corp., 225 Ga.
18  App. 636, 638-639 (Ga. Ct. App. 1997), explained the elements of the tort as follows: "(1)
19  intentional or reckless conduct (2) that is extreme and outrageous and (3) causes emotional
20  distress (4) that is severe.  (Id. (citing Trimble v. Circuit City Stores, 220 Ga. App. 498, 499 (469
21  S.E.2d 776) (1996)).  Under either analysis, Plaintiff has failed to demonstrate that NTL's actions
22  were "outrageous."  Even assuming NTL incorrectly determined the effects of the Atripla on
23  Plaintiff's specimen, at most, NTL Defendant's actions constitute negligence.

### B. Plaintiff's Second Cause of Action for Breach of Fiduciary Duty

25  The elements of a cause of action for breach of fiduciary duty are the existence of a
26  fiduciary relationship, breach of fiduciary duty, and damages. Oasis West Realty, LLC v.
27  Goldman, 51 Cal. 4th 811, 820-821 (Cal. 2011); *see also*, Reliance Trust Co. v. Candler, 2012
28  Ga. App. LEXIS 336 (Ga. Ct. App. Mar. 26, 2012) and In re Tri-State Crematory Litig., 215

1  F.R.D. 660, 682-683 (N.D. Ga. 2003)

2  While Plaintiff alleges NTL owed a special duty to him, he has not cited any case law or
3  statutory law recognizing the existence of a fiduciary relationship between drug testing facilities,
4  like NTL, and Plaintiff.  The Court's own research failed to uncover the existence of such an
5  express fiduciary duty.  For this reason, the Court finds Plaintiff has failed to state a claim for
6  breach of a fiduciary duty.

### C. Plaintiff's Third Cause of Action for Defamation, Libel, and Slander

Plaintiff correctly states that defamation can occur through libel or slander. (Doc. 1 at 14). Both California and Georgia describe the elements of defamation in a similar manner. (*See* Wertz v. Allen, 313 Ga. App. 202, 205 (Ga. Ct. App. 2011) explaining the four elements in a cause of action for defamation as: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm" and Taus v. Loftus, 40 Cal. 4th 683, 720 (Cal. 2007) listing the tort of defamation as "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.")

Both states have enacted statutes which similarly define libel, slander, privilege and other terms relating to the causes of actions as well.  While Georgia's slander laws and definitions of privileges appear to be slightly broader than those enacted in California, the two forums do not appear to differ in the general elements needed to state a cause of action for defamation via libel or slander.

#### 1. Libel

O.C.G.A. § 51-5-1 defines libel as a "false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule."  The statute further requires publication of the libelous matter.  (Id.)  O.C.G.A. § 51-5-3 explains that publication occurs "as soon as it is communicated to any person other than the party libeled."  (See also Mathis v. Cannon, 276 Ga. 16, 26-27 (Ga. 2002) § 51-5-7.)

California law describes libel as a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation. (Cal Civ Code § 45.)

### 2. Slander

O.C.G.A. § 51-5-4 explains that Slander as follows:

Slander or oral defamation consists in: (1) Imputing to another a crime punishable by law; (2) Charging a person with having some contagious disorder or with being guilty of some debasing act which may exclude him from society; (3) Making charges against another in reference to his trade, office, or profession, calculated to injure him therein; or (4) Uttering any disparaging words productive of special damage which flows naturally therefrom. (b) In the situation described in paragraph (4) of subsection (a) of this Code section, special damage is essential to support an action; in the situations described in paragraphs (1) through (3) of subsection (a) of this Code section, damage is inferred.

O.C.G.A. § 51-5-4 California law defines slander as follows:

[A] false and unprivileged publication, orally uttered, and also communications by radio or any mechanical or other means which: 1. Charges any person with crime, or with having been indicted, convicted, or punished for crime; 2. Imputes in him the present existence of an infectious, contagious, or loathsome disease; 3. Tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits; 4. Imputes to him impotence or a want of chastity; or 5. Which, by natural consequence, causes actual damage.

Cal Civ Code § 46.

### 3. Privileged Communications

Both states require that the defamatory statement be an "unprivileged communication." As to Plaintiff's claim, the relevant privilege provided for in each statute is as follows: O.C.G.A. § 51-5-7 provides a privilege for statements made with "a good faith intent on the part of the speaker to protect his or her interest in a matter in which it is concerned;" and Cal. Civ. Code § 47(b)(3) describes a privileged publication as "one made in any other official proceeding authorized by law." Georgia's privilege statute overall appears to be broader than California's statute; however, the Court need not decide upon the applicable choice of law regarding privilege until or unless an affirmative defense is raised by DTL Defendants.

Given that the general elements of a defamation cause of action under either Georgia or California law do not differ, the Court need not analyze the choice of law issue any further. Plaintiff has alleged DTL reported the results of Plaintiff's urine sample to FSP both verbally and in writing.  Plaintiff further alleges that such reports were false and resulted in damages to Plaintiff.  Thus, Plaintiff has stated a cognizable claim for defamation.

### D. Plaintiff's Fourth Cause of Action for Personal Injuries

Plaintiff's Fourth Cause of Action is for "Personal Injuries."  In the first paragraph of this cause of action Plaintiff reiterates his claims that DTL Defendant's actions directly caused him damages. (Doc. 16 at 21).  Plaintiff dedicates the remainder of the allegations in this cause of action to the inadequacies of DTL's testing procedures.  A cause of action for "personal injuries" is essentially a negligence claim.  Given that the Court has found that Plaintiff stated a cognizable claim for negligence, the Court will therefore, dismiss this cause of action as it is subsumed under Plaintiff's First cause of action.

## V. Leave to Amend

In sum, the Court finds that Plaintiff's complaint states cognizable claims against Defendants NTL, Inc., Shah and Sneath only for negligence and defamation.  Therefore, Plaintiff may proceed in one of two ways; Plaintiff may elect to have the complaint served on the defendants only on these claims, or Plaintiff may delay service and file a first amended complaint, attempting to cure the deficiencies identified by the Court in this order.  See Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987) ("A pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (internal quotations omitted).

If Plaintiff elects to file a first amended complaint, he is cautioned that he may not change the nature of this suit by adding new, unrelated claims.  See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).  Plaintiff is also reminded that once he files his first amended complaint, his original pleadings are superceded and no longer serve any function in the case.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Therefore, the first amended complaint must be "complete in itself without reference to the prior or superceded

1  pleading." Local Rule 220. All causes of action alleged in the amended complaint which are not
2  re-alleged in the second amended complaint are waived. *See* King v. Atiyeh, 814 F.2d 565, 567
3  (9th Cir. 1987).

4  Likewise, if Plaintiff chooses to amend his Complaint, Plaintiff is admonished that he is
5  required to provide a short, plain statement of his case. Including conclusions, without any facts
6  to support them, is insufficient to state a cause of action. Iqbal, 129 S.Ct. at 1949.

## ORDER

Based upon the foregoing, the Court **ORDERS**:

1. The motion to proceed in forma pauperis is **GRANTED**;
2. Within thirty (30) days from the date of service of this order Plaintiff shall:
   a. notify the Court that he is willing to proceed on his first cause of action only for negligence and his third cause of action for defamation (including libel and slander); or
   b. file an amended complaint.

An amended complaint must reference the docket number assigned to this case and must be labeled "First Amended Complaint."

3. Failure to notify the Court of his decision to proceed on the cognizable claims or file an amended complaint in accordance with this order will result in a recommendation that this action be dismissed pursuant to Local Rule 110.

IT IS SO ORDERED.

Dated:   **April 26, 2012**                           **/s/ Jennifer L. Thurston**
                                                     UNITED STATES MAGISTRATE JUDGE