1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

WILSON GORRELL,                           )   Case No.: 1:12-cv-0554 - JLT
                                          )
            Plaintiff,                    )   ORDER GRANTING IN PART AND DENYING IN
                                          )   PART PLAINTIFF'S MOTION TO COMPEL
      v.                                  )   DEFENDANTS' RESPONSES TO DISCOVERY
                                          )
THOMAS SNEATH, et al.,                    )   (Doc. 33)
                                          )
            Defendants.                   )
                                          )
                                          )
_____          )

I.      **Background**

        Plaintiff Wilson Gorrell ("Plaintiff") filed a motion to compel discovery on February 11, 2013,

seeking "to obtain complete answers to the discovery requests" pursuant to Rule 37(a) of the Federal

Rules of Civil Procedure.  (Doc. 33).  On February 27, 2013, Defendants filed their opposition to the

motion, asserting it was "both procedurally and substantively deficient."  (Doc. 38).  Specifically,

Defendants assert Plaintiff failed to meet and confer as required under Rule 37(a), or to attempt to

contact counsel regarding the discovery dispute.  Id. at 1-2 (citing Fed. R. Civ. P. 37(a)(1)).  In

addition, Defendants contend, "Plaintiff never contacted counsel for defendants in an effort to prepare

a Joint Statement re Discovery Disagreement," which he was required to do pursuant to Local Rule

251(b).  Id. at 2.

        Although the Court recognizes Plaintiff is incarcerated, it is clear from the record that he has

been in contact with Defendants' counsel on several occasions and has participated in the filing of a

1

joint statement.  In fact, the Court notes that Plaintiff wrote to Defendants' counsel on at least one

occasion in an attempt to resolve the matter before filing the instant motion. (Doc. 33 at 63-66).

However, there is no dispute that Plaintiff failed to cooperate with Defendants in filing a joint

statement.  Therefore, **in the future, any discovery motion filed without compliance with the Local**

**Rules, the Court's scheduling order or the Rules of Civil Procedure, will be dropped from**

**calendar.**

## II.     Motion to Compel

The scope and limitations of discovery are set forth by the Federal Rules of Civil Procedure.

In relevant part, Rule 26(b) states:

> Unless otherwise limited by court order, parties may obtain discovery regarding any
> nonprivileged manner that is relevant to any party's claim or defense – including the
> existence, description, nature, custody, condition, and location of any documents or
> other tangible things . . . For good cause, the court may order discovery of any matter
> relevant to the subject matter involved in the accident.  Relevant information need not
> be admissible at the trial if the discovery appears reasonably calculated to lead to the
> discovery of admissible evidence.

Fed. R. Civ. P. 26(b).  Relevant evidence is defined as "evidence having any tendency to make the

existence of any fact that is of consequence to the determination of the action more probable or less

probable than it would be without the evidence."  Fed. R. Evid. 401.

### A.     Interrogatories

A party may propound interrogatories relating to any matter that may be inquired to under Rule

26(b).  Fed. R. Civ. P. 33(a).  A responding party is obligated to respond to the fullest extent possible,

and any objections must be stated with specificity.  Fed. R. Civ. P. 33(b)(3)-(4).  In general, a

responding party is not required "to conduct extensive research in order to answer an interrogatory, but

a reasonable effort to respond must be made." Haney v. Saldana, 2010 U.S. Dist. LEXIS 93447, at *9

(E.D. Cal. Aug. 24, 2010) (citing L.H. v. Schwarzenegger, 2007 U.S. Dist. LEXIS 73753 (E.D. Cal.

Sep. 21, 2007)).  Further, the responding party must supplement a response if the information sought is

later obtained or the previous response requires a correction. Fed. R. Civ. P. 26(e)(1)(A).

Any grounds of an objection to an interrogatory must be stated "with specificity."  Fed. R.

Civ. P. 33(b)(4); see also Nagele v. Electronic Data Systems Corp., 193 F.R.D. 94, 109 (W.D. N.Y.

2

1  2000) (objection that interrogatories were "burdensome" overruled for failure to "particularize" the

2  basis for objection); <u>Mitchell v. AMTRAK</u>, 208 F.R.D. 455, 458 at n.4 (D.D.C. 2002) (objections

3  must explain how an interrogatory is overbroad or unduly burdensome).

4        B.      <u>Requests for Production of Documents</u>

5        A party may request documents "in the responding party's possession, custody, or control."

6  Fed. R. Civ. P. 34(a)(1).  Similarly, a party may serve a request "to permit entry onto designated land

7  or other property possessed or controlled by the responding party, so that the requesting party may

8  inspect, measure, survey, photograph, test, or sample the property . . ."  Fed. R. Civ. P. 34(a)(2).  A

9  request is adequate if it describes items with "reasonable particularity;" specifies a reasonable time,

10  place, and manner for the inspection; and specifies the form or forms in which electronic information

11  can be produced.  Fed. R. Civ. P. 34(b).  Thus, a request is sufficiently clear if it "places the party

12  upon 'reasonable notice of what is called for and what is not.'"  <u>Kidwiler v. Progressive Paloverde Ins.</u>

13  <u>Co.</u>, 192. F.R.D. 193, 202 (N.D. W. Va. 2000) (quoting <u>Parsons v. Jefferson-Pilot Corp.</u>, 141 F.R.D.

14  408, 412 (M.D.N.C. 1992)); *see also* Schwarzer, Tashima & Wagstaffe, <u>California Practice Guide:</u>

15  <u>Federal Civil Procedure Before Trial</u> (Rev. #1 2011) Discovery, para. 11:1886 ("the apparent test is

16  whether a respondent of average intelligence would know what items to produce").

17        The responding party must respond in writing and is obliged to produce all specified relevant

18  and non-privileged documents, tangible things, or electronically stored information in its "possession,

19  custody, or control" on the date specified.  Fed. R. Civ. P. 34(a).  Actual possession, custody or control

20  is not required.  "A party may be ordered to produce a document in the possession of a non-party

21  entity if that party has a legal right to obtain the document or has control over the entity who is in

22  possession of the document."  <u>Soto v. City of Concord</u>, 162 F.R.D. 603, 620 (N.D.Cal. 1995).  Such

23  documents include documents under the control of the party's attorney.  <u>Meeks v. Parson</u>, 2009 U.S.

24  Dist. LEXIS 90283, 2009 WL 3303718 (E.D.Cal. September 18, 2009) (involving a subpoena to the

25  CDCR); <u>Axler v. Scientific Ecology Group, Inc.</u>, 196 F.R.D. 210, 212 (D.Mass. 2000) (A "party must

26  produce otherwise discoverable documents that are in his attorneys' possession, custody or control.").

27        In the alternative, a party may state an objection to a request, including the reasons.  Fed. R.

28  Civ. P. 34(b)(2)(A)-(B).  When a party resists discovery, he "has the burden to show that discovery

should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." Oakes v. Halvorsen Marine Ltd., 189 F.R.D 281, 283 (C.D. Cal. 1998) (citing Nestle Food Corp. v. Aetna Cas. & Sur. Co., 135 F.R.D. 101, 104 (D.N.J. 1990)). Boilerplate objections to a request for a production are not sufficient. Burlington Northern & Santa Fe Ry. v. United States Dist. Court, 408 F.3d 1142, 1149 (9th Cir. 2005).

If a party "fails to respond that inspection will be permitted - or fails to permit inspection - as requested under Rule 34," the propounding party may make a motion to compel production of documents. Fed. R. Civ. P. 37(a)(3)(B)(iv). Further, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4). "The moving party bears the burden of demonstrating 'actual and substantial prejudice' from the denial of discovery." Hasan v. Johnson, 2012 U.S. Dist. LEXIS 21578 at *5 (E.D. Cal. Apr. 9, 2012) (citing Hallet v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002)).

## III.    Request for production of documents No. 3

Plaintiff asserts that he has requested Defendant National Toxicology produce a copy of the contract it had with the Bureau of Prisons ("BOP"). Plaintiff has failed to provide a copy of the specific request and has failed to provide a copy of the response. However, the parties agree that Defendant refused to produce the document only because Plaintiff could obtain a copy of the contract from the BOP. (Doc. 38 at 3). Plaintiff noted, however, that when he made his Freedom of Information Act request to the BOP, the BOP directed Plaintiff back to Defendant in order to obtain a copy of the contract. Because Plaintiff, seemingly, cannot obtain a copy of the contract from the BOP, the Court **GRANTS** the motion and Defendant **SHALL** produce a copy of the contract.

## IV.    Interrogatories served on National Toxicology Laboratories

### A.    Special Interrogatory No. 2

Plaintiff requested information regarding whether Substance Abuse & Mental Health Services Administration/ Department of Health and Human Services ("SAMHSA/DHHS") standards "were . . . adhered to and followed in conducting Plaintiff's drug test." (Doc. 33 at 36). If the laboratory did not adhere to any SAMHSA/DHHS standards, Plaintiff requested Defendant "identify fully which were not, and what the potential consequences may have been on the Plaintiff's drug tests results." Id.

1    National Toxicology responded that SAMHSA/DHHS standards were not applied, but rather it

2    "processed the samples pursuant the requirements of its contract with the Bureau of Prisons."  (Doc. 33

3    at 36).  National Toxicology objected to the second portion of the interrogatory, asserting it "[c]alls for

4    premature expert witness testimony and speculation as to "potential consequences."  Id.

5    Plaintiff contends the response was inadequate because National Toxicology is "the only party

6    intimately familiar with the BOP contract as it pertains to the drug testing and what constitutes sound

7    testing procedures," and "[i]f the contract does establish different testing protocols than established by

8    SAMHSA/DHHS, the Defendant[] should be eminently qualified to identify them."  (Doc. 33 at 4).

9    Significantly, only an expert would be qualified to address this information, because experts testify as

10   to "scientific, technical or other specialized" information.  See Fed. R. Evid. 702.  Further, as a general

11   rule, "a party may not, by interrogatories or deposition, discovery facts known or opinions held by an

12   expert . . ."  Fed. R. Civ. P. 26(b)(4)(D).  Because Plaintiff prematurely seeks disclosure of expert

13   opinions, his request for further responses to Special Interrogatory No. 2 is **DENIED**.

14       B.      Special Interrogatory No. 3

15   Plaintiff seeks information regarding National Toxicology's employment of a certified Medical

16   Review Officer ("MRO"), and the identity of the MRO who reviewed Plaintiff's test results.  (Doc. 33

17   at 38).  According to Plaintiff, National Toxicology advertised the services of an MRO, and Defendant

18   should have to answer "why ... they advertise services not available and that are required of a certified

19   SAMHSA/DHHS laboratory."  Id. at 5, 38.

20   In response to the interrogatory, National Toxicology asserted an "MRO is not employed by or

21   affiliated with a laboratory such as responding party."  Id. at 39.  The company maintains, "To the

22   extent that the website for responding party stated differently at one time, that website information was

23   inaccurate."  (Doc. 38 at 4).  Plaintiff has not presented any evidence that the response is untrue or

24   otherwise insufficient.  Accordingly, Plaintiff's request to compel further information related to

25   Special Interrogatory No. 3 is **DENIED**.

26       C.      Special Interrogatory No. 4

27   Plaintiff asserts he contacted National Toxicology in writing on August 8, 2011, informing the

28   laboratory "of the controversy surrounding his antiretroviral medication and the drug results."  (Doc.

33 at 40-41).  In the letter, Plaintiff reports that he "asked for the laboratory's help in resolving this serious problem by reviewing and investigating the test, and that the laboratory retain and re-test the specimen in question."  Id.  Therefore, Plaintiff asked:

> A.   What actions, if any, did the laboratory take to review and investigate this situation?
>
> B.   Did the laboratory re-test and /or retain the specimen?
>
> C.   Does the laboratory currently have possession of the specimen?

(Doc. 33 at 41).

National Toxicology objected to the interrogatory on the grounds it "assumes facts not in evidence—namely, that employees of the responding party received and/ or reviewed plaintiff's alleged writing of August 8, 2011."  (Doc. 33 at 41).  National Toxicology asserted the laboratory "is required by [the] Bureau of Prisons contract to not respond to prisoner/ inmate correspondence."  Id.

As an initial matter, the objection that an interrogatory "assumes facts not in evidence" is not proper in the course of discovery.  See Garcia v. Clark, 2012 U.S. Dist. LEXIS 51771, 2012 WL 1232315, at *2 (E.D. Cal. Apr. 12, 2012) (citing Roesberg v. Johns-Manville Corp., 85 F.R.D. 292, 298 (D.C. Pa. 1980) ("That an interrogatory may contain an element of conclusion is not objectionable on this ground alone.")).  Thus, this objection is overruled.  Nevertheless, National Toxicology has responded to the substantive questions, asserting it (A) did not review or investigate Plaintiff's claims, (B) the specimen was not retested, and (C) the laboratory does not have possession of the specimen. (Doc. 33 at 41).  Plaintiff has not shown these responses are insufficient or incomplete.[1]

Plaintiff's request to compel further responses to Special Interrogatory No. 4 is **DENIED**.

D.      Special Interrogatory No. 5

Plaintiff asserts he wrote to National Toxicology again on November 17, 2011, requesting "all the laboratory records, results, reports, chain-of-custody records, etc." pursuant to the Freedom of Information Act.  (Doc. 33 at 43).  According to Plaintiff, he first made this request of the BOP, which referred him to National Toxicology.  Id.  Therefore, Plaintiff requested to know: "What was the laboratory's response, and was the information provided?  If not, why not?"  Id.

---

[1] Although Plaintiff now seeks clarification of whether the contract forbids a response or simply does not state that a response is required (Doc. 33 at 5), he will be able to ascertain this information by reviewing contract.

1    Again, National Toxicology objected to the interrogatory on the grounds it "assumes facts not

2    in evidence—namely, that employees of the responding party received and/ or reviewed plaintiff's

3    alleged writing of November 17, 2011." (Doc. 33 at 44). For the reasons set forth above, this

4    objection is overruled. See Garcia, 2012 WL 1232315 at *2; Roesberg, 85 F.R.D. at 298.

5    Despite its objection, National Toxicology asserted it did not have a response to Plaintiff's

6    correspondence, and it "had no legal duty at that time to provide the requested information." (Doc. 43

7    at 67). When Plaintiff requested further information regarding whether the letter was received and if

8    any action was taken, National Toxicology asserted it "does not maintain records of correspondence

9    from inmates as it is not legally required to do so and was not required to do so under the contract with

10    the Bureau of Prisons." Id. at 43-44. Because Plaintiff has not shown the information was insufficient

11    or nonresponsive, his request to compel further responses to Special Interrogatory No. 5 is **DENIED**.

12    E.    Special Interrogatory No. 6

13    Plaintiff sought information regarding evidence given to the BOP "to support the[] allegation

14    that [his] specimen tested positive for cannabinoids THC Metabolites." (Doc. 33 at 44). Specifically,

15    Plaintiff requested information regarding: (A) what evidence National Toxicology provided to the

16    BOP and (B) whether the evidence the laboratory provided could be independently reanalyzed by a

17    different analysis, and if not, why. Id. National Toxicology responded that it provided "a certification

18    and final report" dated June 17, 2011. Id. National Toxicology objected to the second part of the

19    interrogatory "on the basis that this interrogatory calls for speculation and is irrelevant and not

20    reasonably calculated to lead to the discovery of admissible evidence." (Doc. 33 at 44). National

21    Toxicology only responded "no," the evidence could not be reanalyzed, without explaining why. Id.

22    Importantly, National Toxicology did not support its objections that the interrogatory calls for

23    speculation or is irrelevant. Accordingly, the objections are overruled. See Mancia v. Mayflower

24    Textile Services Co., 253 F.R.D. 354, 358 (D.MD. 2008) (boiler-plate objections waive any legitimate

25    objections responding party may possess); Chubb Integrated Sys., Ltd. v. National Bank of Wash., 103

26    F.R.D. 52, 58 (D.D.C. 1984) (an objection that the information sought by an interrogatory was

27    "irrelevant" did not fulfill the party's burden to explain its objections). Nevertheless, in response to

28    Plaintiff's motion to compel, National Toxicology explained it "believes the urine sample in question

1    is no longer in existence, and as a result, cannot be 'independently reanalyzed.'" (Doc. 38 at 4).

2    Because there does not appear to be any further information responsive to this interrogatory, Plaintiff's

3    motion to compel supplemental responses to Interrogatory No. 6 is **DENIED**.

4              F.        Special Interrogatory No. 7

5              Plaintiff requested that National Toxicology "identify how many specimen's [sic] were tested

6    on June 17, 2011 in the same batch as the Plaintiff's and how many test results were positive for

7    cannabinoids THS Metabcolics." (Doc. 33 at 44).  National Toxicology responded[2]:

8         55 samples were tested on June 17, 2011 in the same batch as the sample in question.
          Of those 55 samples, 18 samples were submitted by the Bureau of Prisons.  Of those 18
9         samples, six were tested for THC and all six were positive.  Twelve of the 18 Bureau of
          Prisons samples were tested for drugs other than THC, and as a result, responding party
10        cannot state if those twelve samples were positive for THC as they were not tested for
          that substance.
11

12   Id.  Plaintiff noted National Toxicology's response to the interrogatory was incomplete, and requested

13   information regarding the 37 samples that were not submitted by the BOP.  Id.  National Toxicology

14   objected to disclosure of this information, asserting that it was "not relevant to the issues presented in

15   this case and therefore unlikely to lead to the discovery of admissible evidence."  Id.  Therefore,

16   National Toxicology "decline[d] to provide a response to how many of the 37 samples not submitted

17   by the Bureau of Prisons were tested for THC and confirmed positive for THC."  Id.

18             Seeking to compel the disclosure of this information, Plaintiff contends the information is

19   relevant to his claim, because "if the tests conducted by the Defendants on those samples confirmed

20   positive for THC," this may show the test results were "inaccurate due to contamination." (Doc. 33 at

21   6).  Significantly, in his complaint, Plaintiff alleges National Toxicology failed to follow required

22   protocols in testing his urine sample, and failed to produce evidence that the gas chromatograph was

23   printed out for each calibrator, control, sample or that all data was reviewed.  (Doc. 1 at 9).  Given

24   these allegations, whether other samples tested positive for THC on the same date as Plaintiff's sample

25   is information relevant to Plaintiff's claims, even if the samples were not provided by the BOP.  See

26   Oppenheimer Fund, Inc. v. Sanders, 427 U.S. 340, 351 (1978) (relevancy to a subject matter is

27

28            [2] Prior to providing its response, National Toxicology objected that the interrogatory "calls for speculation."
     (Doc. 33 at 45.  However, National Toxicology has not explained how the information regarding the test results is
     speculative, and the objection is **OVERRULED**.

interpreted "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case").

Accordingly, Plaintiff's request to compel further responses to Special Interrogatory No. 7 is **GRANTED** and National Toxicology **SHALL** identify (1) how many of the 37 samples not submitted by the BOP were tested for THC and (2) the number confirmed positive for THC.

G.      Special Interrogatory Nos. 8, 14

Plaintiff requested that National Toxicology "fully detail what controls were conducted when the Plaintiff's specimen was tested."  (Doc. 33 at 45).  Included in this request, Plaintiff sought information regarding whether the BOP submitted blind samples for testing.  Id. at 45-46.  Further, supplementing Special Interrogatory No. 14, Plaintiff requested to know if the BOP would be able to determine there was a false-positive if blind samples were not submitted.  Id. at 54.  National Toxicology asserted it "is unaware if the Bureau of Prisons submits blind samples for testing."  Id. at 46.  In addition, National Toxicology asserted it "lacks personal knowledge as to what the Bureau of Prisons would or would not be able to determine as it relates to false-positives."  Id. at 54.

While Plaintiff asserts this response is "evasive," National Toxicology adequately responded to the interrogatories given its assertion that it lacks personal knowledge of any blind samples.  (Doc. 33 at 46; Doc. 38 at 4).  See Heilman v. Chernis, 2012 U.S. Dist. LEXIS 150342, at *16 (E.D. Cal. Oct. 18, 2012) (a response is not properly characterized as evasive where the defendant lacks knowledge).  According, Plaintiff's requests to compel further responses to Special Interrogatory Nos. 8 and 14 are **DENIED**.

H.      Special Interrogatories Nos. 9, 10, 12, 13

Plaintiff requested in formation in Special Interrogatories Nos. 9, 10, 12, and 13, that addressed affirmative defenses set forth by National Toxicology in its answer.  (Doc. 33 at 48-59, 51-52).  In response to each contention interrogatory, National Toxicology explained it "filed a denial to the plaintiff's complaint in order to put the plaintiff to his burden of proof under the law" and "is still conducting an investigation and evaluation of the facts and circumstances giving rise to the litigation."  (Doc. 33 at 48; see also Doc. 8 at 4-5).

9

1      Notably, contention interrogatories to identify facts supporting affirmative defenses in an

2    answer may be premature where discovery is in its early stages.  <u>Zulewski v. Hershey Co.</u>, 2012 U.S.

3    Dist. LEXIS 171375, at * 4-5 (N.D. Cal. Dec. 3, 2012).  Given the state of the litigation, Plaintiff's

4    contention interrogatories are premature and would require speculation by National Toxicology.

5    Accordingly, Plaintiff's requests to compel further responses to Special Interrogatories Nos. 9, 10, 12

6    and 13 are **DENIED**.

7        I.      Special Interrogatory No. 15

8      Plaintiff requested National Toxicology identify "[w]hat local, state or federal agencies provide

9    oversight to the operations of National Toxicology Laboratories, Inc."  (Doc. 33 at 54).  National

10   Toxicology objected that the interrogatory "calls for speculation and premature expert witness

11   opinion."  <u>Id.</u>  In addition, National Toxicology objected to the interrogatory as being "vague and

12   ambiguous and overbroad."  <u>Id.</u>  Plaintiff contends these objections are "without any basis," because

13   National Toxicology "should be well aware of any and all agencies that provide oversight."  (Doc. 33

14   at 54).  He asserts this information "neither calls for speculation or expert opinion."  <u>Id.</u> at 9.

15      Significantly, Plaintiff does not identify what he means by "oversight," or the manner in which

16   he believes "local, state or federal agencies" oversee the operations of National Toxicology.  It is not

17   clear whether Plaintiff seeks information regarding sample preparation, machine calibration, the

18   manner in which reports are prepared, or simply *any* procedure that may be undertaken by National

19   Toxicology—which may or may not relate to his claims.  Accordingly, Defendant's objection that this

20   interrogatory is interrogatory is vague, ambiguous and overbroad, is **SUSTAINED**, and Plaintiff's

21   motion to compel further responses to Special Interrogatory No. 15 is **DENIED**.

22        J.      Special Interrogatory No. 16

23      Plaintiff seeks information regarding "the amount the laboratory charged the Bureau of Prisons

24   for the Plaintiff's drug test in question," as well as the amounts charged to "any federal agencies for a

25   comparable workplace drug test" and "a typical business for employee drug testing."  (Doc. 33 at 55).

26   National Toxicology objected that Plaintiff "seeks information that is irrelevant to issues presented in

27   this case and not reasonable calculated to lead to the discovery of admissible evidence."  <u>Id.</u>

28

Plaintiff speculates this information is "extremely relevant if the price charge[d] [by] the BOP reflects a different quality of service." (Doc. 33 at 9).  The Court disagrees.  The prices charged by National Toxicology and other businesses are not relevant to Plaintiff's claims of negligence and defamation because it is not evidence that has "any tendency to make the existence of any fact that is *of consequence to the determination of the action* more probable or less probable than it would be without the evidence."[3]  See Fed. R. Evid. 401 (emphasis added).  Accordingly, Defendant's objection that the information requested is irrelevant is **SUSTAINED**, and Plaintiff's motion to compel a response to Special Interrogatory No. 16 is **DENIED**.

> K.      Special Interrogatory No. 18

>> 1.      Initial Interrogatory

Plaintiff identified fourteen of his urine samples he believed were tested by National Toxicology pursuant to its contract with the BOP, and requested the defendant "disclose the amount of THC present" in the samples, dated September 2, 2011 through September 30, 2012.  (Doc. 33 at 56).  National Toxicology responded that its "last test of a sample pursuant to a Bureau of Prisons contract took place on March 5, 2012."  Id. at 57.  With regard to eight samples it processed, National Toxicology reported each test was "negative."  Id.

Plaintiff asserted the information provided by National Toxicology was ambiguous, because "the term negative would apply to any test result under 15 ng/ml according to SAMHSA, and . . . to any test result under 4 ng/ml if the test was performed under contract to the Bureau of Prisons."  (Doc. 33 at 57).  Therefore, Plaintiff again requested that National Toxicology "indicate the amount of THC present, if any, for these samples."  Id.  National Toxicology responded that its samples "were all negative as per the operative Bureau of Prisons contract at the time the testing was sampled."  Id. at 58.

Significantly, National Toxicology's response is ambiguous.  It does not reveal whether the THC level was merely below the level outlined by the contract (under 4 ng/ml), or whether there was no THC detected in the samples. Accordingly, Plaintiff's request to compel further responses to this

---

[3] The fact that Defendant may charge a higher price to others may be due to a myriad of factors having nothing to do with the level of service provided. Presumably, Defendant was obligated to participate in a competitive bidding process to obtain the contract with the BOP which *is designed to* result in the government paying a lower price for specified services. Thus, the significant information is the services Defendant was required to provide; not the price it charged for those services.

1   interrogatory is **GRANTED.**  National Toxicology **SHALL** clarify whether the "negative" results for

2   the identified samples indicate the tests did not detect the presence THC at any level or identify the

3   level detected if the amount of THC was lower than the "negative" level set forth by the BOP contract.

4                    2.      Supplement to Interrogatory No. 18

5          Upon learning National Toxicology last processed one of his urine samples on March 5, 2012,

6   Plaintiff inquired: "[D]id the Bureau of Prisons cancel the contract with the Respondent laboratory after

7   May 5, 2012?  If so, what reason was given by the Bureau of Prisons for the cancellation?"  (Doc. 33 at

8   57).  National Toxicology contends this information is "wholly irrelevant to whether or not the standard

9   of care was met in this matter."  (Doc. 38 at 5).

10         Plaintiff has not explained why he believes information regarding the cancellation of the

11  contract between the BOP and National Toxicology is relevant to the action.  Importantly, as the party

12  seeking discovery, Plaintiff "has the burden of establishing that [his] request satisfies the relevancy

13  requirements of Rule 26(b)."  Duenez v. City of Manteca, 2013 U.S. Dist. LEXIS 24954, at *6 (E.D.

14  Cal. Feb. 22, 2013) (citation omitted).  Because Plaintiff has not met this burden, his request to compel

15  responses to the supplement to Special Interrogatory No. 18 is **DENIED.**

16  **V.      Interrogatory served on Thomas Sneath**

17         Plaintiff requested Mr. Sneath "explain fully [his] role in the confirmatory Gas Chromatography/

18  Mass Spectometry (GC/MS) testing, analysis, calibration, controls, review, and any other part in the

19  process of testing the Plaintiff's specimen and the determination that it was confirmed positive for

20  Cannabinoids THC Metabolites."  (Doc. 33 at 27).  Mr. Sneath explained he had "a supervisory role

21  … as Hasmukh Shah was the validator of the sample in question."  Id.  According to Mr. Sneath, "this

22  did not mean that [he] had direct visual supervision over the testing, analysis, calibration, controls.

23  Review, or any other part of the testing of the plaintiff' sample."  Id.  Rather, his  role "involve[d]

24  responding to any questions or inquiries of Mr. Shah."  Id.  Mr. Sneath asserted he was unable to

25  "recall if any such questions or inquiries were made of him for this specific sample in question."  Id.

26         Because Mr. Sneath appears to lack further personal knowledge to respond in more detail,

27  Plaintiff's motion to compel further responses to Interrogatory No. 2 is **DENIED**.

28  ///

**VI.     Interrogatories served on Hasmukh Shah**

     A.     Special Interrogatory No. 2

     Plaintiff requested Mr. Shah "explain fully [his] role in the confirmatory Gas Chromography/Mass Spectometry (GC/MS) testing, analysis, calibration, controls, review, and any other part in the process of testing the Plaintiff's specimen and the determination that it was confirmed positive for Cannabinoids THC Metabolites." (Doc. 33 at 16).  Mr. Shah responded he "was the supervisor and analyst for this sample," which meant he "personally reviewed and certified the results for plaintiff's sample at issue."  Id.  In addition, Mr. Shah reported he "performed the calibration in question."  Id.  Plaintiff believed this response was insufficient and inquired:

> 1.   Did the Respondent confirm the chain-of-custody?
> 2.   Did the Respondent identify the potential for interfering substances?
> 3.   Did the Respondent identify the effect of carryover that may occur between aliquots?
> 4.   Did the Respondent assume that there was at least one control certified to contain no drug or drug metabolite?
> 5.   Did the Respondent ensure that there was at least one positive control with the drug or drug metabolite targeted at 25% above the cutoff?
> 6.   Did the Respondent ensure a minimum of 10% of the total specimens in each batch were quality control samples?
> 7.   Did the Respondent ensure that the controls were analyzed concurrently within the specimens?

Id.  According to Plaintiff, Mr. Shah failed to respond to supplemental questions numbers 4 through 7. (Doc. 33 at 10).  In addition, Mr. Shah's did not respond to Plaintiff's inquiry regarding SAMHSA/DHHS requirements and Mr. Shah's "dual role" as analyst and supervisor.  Id.

     Again, Defendants assert the SAMHSA/DHHS requirements are inapplicable.  (Doc 38 at 5). In making this statement, however, it is unclear whether Mr. Shah is asserting the procedures set forth in supplemental questions 4 through 7 were not followed because the SAMHSA/DHHS requirements were inapplicable.

     Further, Defendants contend Plaintiff "seeks expert witness information" with the supplemental questions to which Mr. Shah has not responded.  For the reasons set forth above, the Court agrees that testimony regarding SAMHSA/DHHS standards is within the scope of expert testimony.  However, Plaintiff also seeks information that merely requires Mr. Shah to answer whether he took certain actions in conducting the testing; he is not required to explain why he did or did not do

these things—which *would* implicate expert testimony.  Consequently, Plaintiff's motion to compel further responses to Special Interrogatory No. 2 is **GRANTED IN PART**, and Defendant Hasmukh Shah **SHALL** respond to supplemental questions numbers 4 through 7.

> B.      Special Interrogatory Nos. 3, 4

Plaintiff asserts Mr. Shah is "evading responding to the question of what SAMHSA requirements are not being applied to testing for the BOP."  (Doc. 33 at 11).  Plaintiff requests the Court compel Mr. Shah to "identify any requirements of the BOP contract that conflict with those standards set by SAMHSA" in response to Special Interrogatory No. 3. Id.  In addition, Plaintiff inquired whether the process Mr. Shah followed in certifying the results of the test "adhere[d] to all of the DHHS requirements." Id. at 21.

The defendant objected to the interrogatories as overly broad and burdensome "given the multitude of SAMSHA/DHHS requirements." (Doc. 33 at 19).  Because it was not clear to which DHHS requirements Plaintiff referred, Mr. Shah objected to Special Interrogatory No. 4 as vague and ambiguous. Id. at 21.  Mr. Shah asserted he believed the information is irrelevant because "SAMSHA/DHHS requirements apply in the context of the testing of samples from federal employees" and, to his knowledge, "plaintiff was not a federal employee or engaged in the employment of a company that is part of a governmentally regulated industry at the time his sample was collected." Id.

Mr. Shah's objections to the interrogatories are well-founded.  It is not clear what standards to which the Plaintiff refers when seeking information regarding the BOP contract and its compliance or possible conflicts with SAMSHA/DHHS requirements.  Requiring the defendant to review *all* possible SAMSHA/DHHS standards and compare them with the BOP contract would be burdensome and would produce irrelevant information because Defendants claim these standards were not followed. See Haney, 2010 U.S. Dist. LEXIS 93447, at *9 (explaining a responding party is not required "to conduct an extensive search in order to answer an interrogatory").  Therefore, Plaintiff's request to compel further responses to Special Interrogatories Nos. 3 and 4 is **DENIED**.

> C.      Special Interrogatory No. 3(e)

Plaintiff inquired whether Mr. Shah "note[d] the discrepancy in the Bureau of Prison's chain of-custody report of the specimen collection date."  (Doc. 33 at 17).  The defendant objected that this

1  information was "not relevant and . . . not reasonably calculated to lead to the discovery of admissible

2  evidence." <u>Id.</u> at 18.  When Plaintiff requested Mr. Shah respond to this question, he asserted he

3  would "provide a response to this question only if required to do so by court order." <u>Id.</u> at 20.

4        Although Defendants continue to object that Plaintiff seeks "irrelevant information" (Doc. 38

5  at 6), any discrepancies in the chain-of-custody report observed by Mr. Shah would be relevant to

6  Plaintiff's claim that Defendants are liable for negligence for failure to follow required protocols in

7  testing his urine sample.  Therefore, Defendants' objection is **OVERRULED**, and Mr. Shah **SHALL**

8  respond to Plaintiff's Special Interrogatory No. 3(e).

9  **VII.**    **Conclusion and Order**

10        Based on the foregoing, Plaintiff's Motion to Compel Defendants' Response to Discovery

11  (Doc. 33) is **GRANTED IN PART and DENIED IN PART** as follows:

12       1.      The Motion to Compel Production for Request No. 3 is **GRANTED**;

13       2.      The Motion to Compel further responses from Defendant National Toxicology for

14                Special Interrogatories Nos. 7 and 18 is **GRANTED**;

15       3.      The Motion to Compel further responses from Defendant Hasmukh Shah for Special

16                Interrogatories Nos. 2 and 3(e) is **GRANTED**;

17       4.      As to all remaining requests, the motion is **DENIED**;

18       5.      Defendants are ordered serve Plaintiff with their responses to the interrogatories

19                identified above within fourteen days of the date of service of this order; and

20       6.      The parties are reminded that <u>**no future motion to compel in this case will be heard**</u>

21                <u>**unless the parties meet and confer in good faith**</u> and they participate in drafting a

22                joint statement regarding the dispute.

24  IT IS SO ORDERED.

25    Dated:   <u>**April 5, 2013**</u>         <u>**/s/ Jennifer L. Thurston**</u>

26                                    UNITED STATES MAGISTRATE JUDGE