1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **EASTERN DISTRICT OF CALIFORNIA**
10

11   WILSON GORRELL,                              )   Case No.: 1:12-cv-00554 - JLT
                                                   )
12                    Plaintiff,                   )   ORDER DENYING PLAINTIFF'S MOTION TO
                                                   )   EXCLUDE EXPERT TESTIMONY AND THE
13          v.                                     )   REPORT OF DARRELL O. CLARDY
                                                   )
14   THOMAS C. SNEATH, et al.,                     )
                                                   )   (Doc. 55)
15                    Defendants.                  )
                                                   )
16   _____          )

17          On June 21, 2013, Plaintiff filed a motion seeking to exclude testimony from Dr. Darrell O.

18   Clardy, Defendants' retained expert, and the report prepared by Dr. Clardy.  In addition, Plaintiff seeks

19   to exclude the testimony from non-retained experts and the Bureau of Prisons' contract.  (Doc. 55).

20   For the following reasons, Plaintiff's motion to exclude evidence is **DENIED**.

21   **I.      Background**

22          Plaintiff, an inmate currently incarcerated at Federal Satellite Low in Jesup, Georgia, initiated

23   this action by filing his complaint against National Toxicology Laboratories and two of its employees

24   on March 9, 2012.  (Doc. 1).  Plaintiff alleged that medication he was taking caused his urine specimen

25   to yield a false positive for cannabinoids in a Gas Chromatography and Mass Spectrometry ("GC/MS")

26   test performed at National Toxicology.  *Id.* at 1.  According to Plaintiff, Defendants "failed to adhere to

27   strict and exacting requirements for testing before certifying a specimen as positive for illicit drug use"

28   and incorrectly informed Federal Satellite Low that his medication had no effect on the positive result.

1

*Id.* at 3.  Plaintiff asserted Defendants were liable for several torts including negligence, intentional infliction of emotional distress, breach of contract, breach of fiduciary duty, defamation, libel, slander, and personal injury.

On April 10, 2012, the action was transferred from the Southern District of Georgia to the Eastern District of California (Doc. 3), thereby initiating the action before this Court.  Because Plaintiff requested to proceed *in forma pauperis*, the Court screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915 to determine whether he stated cognizable claims on April 27, 2012.  (Doc. 3).  The Court determined Plaintiff stated cognizable claims for negligence and defamation only, and he informed the Court that he wished to proceed on these clams on May 9, 2012.  (Doc. 10).  Defendants filed their answer to the complaint on August 6, 2012.  (Doc. 18).

On May 30, 2013, Defendants served their Expert Witness Designation.  (Doc. 55 at 16-17).  Defendants identified Dr. Darrell O. Clardy as a retained expert witness, and designated Thomas Sneath and Hasmukh Shah as non-retained expert witnesses.  *Id.* at 17-18.

## II.      Expert Witnesses

Under the Federal Rules, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."  Fed. R. Evid. 702.  A party must disclose the identity of any expert witnesses expected to testify at trial.  Fed. R. Civ. P. 26(a)(2)(A).  Testimony must be "based upon sufficient facts or data" and be "the product of reliable principles and methods."  Fed. R. Evid. 702.  Further, the expert witness must have "applied the principles and methods reliably to the facts of the case."  *Id.*

## III.     Discussion and Analysis

### A.      Timeliness of the Disclosure

Plaintiff contends any expert testimony from Defendants should be stricken because the disclosure was not made in a timely fashion.  (Doc. 55 at 1-2).  According to Plaintiff, "Defendants' Counsel on March 5, 2013, stated 'he had retained an expert witness who had prepared a report and who would testify on behalf of his clients.'"  *Id.* at 1.  In spite of this, "Defendants withheld th[e] disclosure until the last possible moment."  *Id.*  Further, Plaintiff contends the report prepared by Dr.

Clardy "is obviously intended to rebut evidence provided by the Plaintiff from Dr. David Graham first disclosed on February 4, 2013 and again on March 4, 2013 to the Court and the Defendants."  *Id.* at 2.  Because the disclosure of Dr. Clardy as a retained expert was more than 30 days beyond Plaintiff's disclosure, he asserts it was untimely.  *Id.* at 2.

Disclosures of retained experts and the accompanying reports must be made at the time and in the sequence ordered by the Court.  Fed. R. Civ. P. 26(a)(2)(D).  The Court entered its Scheduling Order in this action on January 23, 2013.  (Doc. 32).  The Court instructed the parties "to disclose all expert witnesses, in writing, on or before **May 31, 2013**."  *Id.* at 2 (emphasis in original).  Defendants disclosed Dr. Clardy as their retained expert and provided his report on **May 30, 2013**.  Consequently, Defendants' disclosure complied with the deadline set by the Court and was timely.  Though Plaintiff argues rebuttal experts must be disclosed within thirty days, this deadline is only applicable "[a]bsent a stipulation or a court order."  Fed. R. Civ. P. 26(a)(2)(D).  As noted above, there *was* a court order issued in this case which set forth when expert disclosures would occur and there is no indication that Dr. Clardy is a rebuttal expert.  Indeed, if he was, Defendants would not have been required to disclose him until June 14, 2013.[1]  (Doc. 32 at 2)

Moreover, from the record it does not appear Dr. Clardy was retained as Defendants' rebuttal expert.  Accordingly, the expert witness testimony and report of Dr. Clardy will not be stricken as untimely.

### B.    Qualifications of Dr. Clardy

The Supreme Court has imposed a "gatekeeping responsibility" in which courts are to engage to ensure that purportedly "expert" evidence "is not only relevant, but reliable."  *Daubert v. Merrell Dow Pharms.*, 509 U.S 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999) (clarifying the court's "gatekeeping" obligation "applies not only to testimony based on 'scientific

---

[1] On the other hand, the Court finds specious the argument that Dr. Clardy was required to have been disclosed earlier because Plaintiff "disclosed" documents related to Dr. Graham.  (Doc. 40 at 15-20)  By no stretch of the imagination is the filing related to Dr. Graham an expert disclosure as required by Fed. R. Civ. P. 26(a)(2). More importantly, Plaintiff makes clear that Dr. Graham has not agreed to act as an expert in this case as evidenced by Plaintiff's motion for appointment of an expert (Doc. 47).  Thus, the fact that Plaintiff filed documents that identified Dr. Graham's experience and a sketch of his observations and concerns about the testing, this does not equate to Plaintiff making an "expert disclosure".  Even if it did, the parties were allowed to disclose their experts early but this would not trigger a duty on the other parties to do so too.

knowledge,' but also to testimony based on 'technical' and 'other specialized' knowledge").  Prior to

considering proffered expert testimony, a trial court "must merely make a determination as to the

proposed expert's qualifications."  *Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1124 (9th Cir. 1994).

A court is not to attempt to determine whether an expert's conclusions are correct, but rather examine

only "the soundness of his methodology."  *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1318

(9th Cir. 1995).

Dr. Clardy's report indicates he possesses a Bachelors of Science degree in Chemistry and

Biochemistry, a Masters of Sciences degree in Biophysics, a Psy.D. from the American Behavioral

Studies Institute, and a Ph.D. in Psychology. (Doc. 51-4, Clardy Decl. ¶ 1).  Dr. Clardy asserts he is a

managing member of Analytical & Forensic Toxicology, Inc., and is "a forensic toxicologist who

practices analytical and forensic toxicology in the State of California."  (*Id.*)  He "regularly involved in

personally analyzing urine samples to detect potential drugs of abuse as well as evaluating the work,

analysis, and results of other toxicologists."  (*Id.*)  Dr. Clardy testifies that he is "extremely familiar

with Gas Chromatography and Mass Spectrometry ("GC/MS") methods, procedures, processes, and

interpretation and analysis of results."  (*Id.* ¶ 2)  He "posess[es] personal knowledge as to the standard

of professional learning, skill, and care required of a toxicologist and laboratory that analyzes urine

samples through the GC/MS process."  (*Id.* ¶ 3)  Thus, it appears Dr. Clardy possesses the "knowledge,

skill, experience, training, [and] education" sufficient to qualify as an expert pursuant to Rule 702.

Moreover, a court may rely on an expert opinion that is not based upon the expert's personal

knowledge of the facts.  *See, e.g., General Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997) (explaining

"[t]rained experts commonly extrapolate from existing data"); *Daubert v. Merrell Dow Pharms.*, 509

U.S. 579, 591 (1993) ("an expert is permitted wide latitude to offer opinions, including those that are

not based on firsthand knowledge or observation"); *Bieghler v. Kleppe*, 633 F.2d 531, 533 (9th Cir.

1980) (rejecting the argument that an expert affidavit was conclusory and inadmissible because it was

based upon hearsay and not personal knowledge); *Gasaway v. Northwestern Mut. Life Ins. Co.,* 820

F.Supp. 1241, 1246 n.2 (D.Haw. 1993) (finding that under Rule 56, "[e]xpert testimony is admissible

even if it is not based on first hand knowledge of the facts").  Accordingly, it is appropriate for the

Court to consider the opinions of Dr. Clardy in evaluating Defendants' motion for summary judgment, provided he has supported his conclusions.

### C.    Contents of the Report

Plaintiff challenges the adequacy of the report prepared by Dr. Clardy.  When a witness such as Dr. Clardy is "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," disclosure must be accompanied by a written report containing:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the data or other information considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all the publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).  If a party fails to provide information as required under Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

Plaintiff asserts that "the expert witness report failed to meet the requirements of Rule 26, which requires an expert witness to provide a written report that among other stipulations requires most importantly 'a complete statement of all opinions the witness will express and the basis and reasons for them.'" (Doc. 55 at 3) (quoting Rule 26(a)(2)(B)(i)).  Plaintiff contends the expert report prepared by Dr. Clardy "is insufficiently reliable…, simply conclusory, [and] lacks any evidence that the standards or controls generally accepted by the relevant toxicology experts were reviewed."  *Id.* at 5.  For these reasons, Plaintiff seeks exclusion of the report from these proceedings pursuant to Rule 37.  *Id.* at 5-6.

#### 1.    Reliability of the report

Plaintiff does not challenge Dr. Clardy's qualifications as a forensic toxicologist, but rather challenges the reliability of his report, in part, because Dr. Clardy was retained specifically for this action.  *See* Doc. 55 at 5 ("Mr. Clardy has presented exactly what he was paid for, a statement that says the Defendants did everything right . . .").  However, such a bare assertion of unreliability is

insufficient to challenge an expert's report.  *Tetsuo Akaosugi v. Benihaha Nat'l Corp.*, 282 F.R.D. 241 (N.D. Cal. 2012).

### 2.     Basis for opinions

It is well-established that expert reports lacking an adequate foundation fail to support may not be considered by the Court.  *See* Fed. R. Civ. P. 37(c)(1) (precluding a party from relying on report if it fails to include the expert's opinions *and* the basis for those opinions); *Sitrick v. Dreamworks*, LLC, 516 F.3d 993 (Fed. Cir. 2008) (explaining "[c]onclusory expert assertions cannot raise triable issues of material fact on summary judgment").  An expert report "must include 'how' and 'why' the expert reached a particular result, the merely the expert's conclusory opinions . . . [because] an expert who supplies only an ultimate conclusion with no analysis supplies nothing of value to the judicial process." *Finwall v. City of Chicago*, 239 F.R.D. 494, 501 (N.D. Ill. 2006).

Although Plaintiff asserts Dr. Clardy completely failed to identify the statements he would express and the bases for his opinions, review of the report indicates otherwise.  First, Dr. Clardy asserts he would provide "opinions regarding the analysis and interpretation of GC/MS results for plaintiff William Gorrell's urine sample at issue [and] whether the applicable standard of care was met."  (Doc. 55 at 21).  Ultimately, Dr. Clardy concluded:

> [T]he plaintiffs urine sample in question (BOP 00011722421/ LAN 110600222) was <u>correctly</u> certified and reported as being positive for the presence of THCA following the GCIMS analysis. It is also my professional opinion that defendants Hasmukh Shah, Thomas Sneath, and National Toxicology Laboratories, Inc. all met the standard of care applicable to toxicologists when analyzing and certifying results of GCIMS tests. I am further of the opinion that it cannot be stated to a reasonable degree of medical or scientific certainty that the plaintiff's urine sample analyzed by defendants was contaminated in any fashion or that other urine samples analyzed prior to plaintiff's sample had any appreciable "carryover" effect that would potentially result in a "false positive" being found for plaintiff's urine sample in question. I am also of the opinion that the reported medication(s) taken by Mr. Gorrell in June of 2011 cannot cause a "false positive" under GC/MS analysis.

(Doc. 55 at 23, ¶ 7).  Dr. Clardy reported his opinions were based upon a number of facts, including review of the procedure used by defendants and that the GC/MS machine used by the defendants "has long been used to determine the presence of a specific substance in a urine sample such as the one given by Mr. Gorrell in June of 2011.")  (*Id.* at 24, ¶7 (e)).  He found the GC/MS machine "was correctly calibrated prior to its usage to analyze Mr. Gorrell's urine sample in question."  (*Id.* ¶ 7(e)).

6

In addition, Dr. Clardy found "[a]dequate controls were utilized prior to the analysis of Mr. Gorrell's sample," and determined that "the accuracy of the measurements of the GC/MS machine utilized by defendants should be considered reliable." (*Id.*, ¶7(f)). Dr. Clardy observed that Plaintiff's "sample was analyzed following both positive and negative control samples, which confirmed the reliability of the results from the GC/MS process." (*Id.* at 25, ¶7(g)).

Because Dr. Clardy is qualified to offer testimony as an expert and his report satisfies the requirements of Rule 26(a), Plaintiff's motion to exclude the report is **DENIED**.

**V.     Conclusion and Order**

Based upon the foregoing**, IT IS HEREBY ORDERED**:

1.     Plaintiff's motion to exclude the expert report and any testimony of Dr. Clardy is **DENIED**;

2.     Plaintiff's motion  to exclude any testimony from the non-retained experts and the motion to exclude the contract between National Toxicology Laboratories, Inc. and the Bureau of Prisons will be considered in due course after Defendants have had an opportunity to oppose the motion;

3.     Defendants' opposition to the Plaintiff's motion (Doc. 55) related to the non-retained experts and the contract between National Toxicology Laboratories, Inc. and the Bureau of Prisons SHALL be filed no later than **July 12, 2012.** Plaintiff may file a reply no later than **August 2, 2012**. The Court will set a hearing for oral argument if it deems it necessary after reviewing the papers filed in opposition and in reply.

IT IS SO ORDERED.

Dated:   __July 3, 2013__                    ____/s/ Jennifer L. Thurston__
                                        UNITED STATES MAGISTRATE JUDGE