UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILSON GORRELL,<br><br>  Plaintiff,<br><br>  v.<br><br>THOMAS SNEATH, et al.,<br><br>  Defendants. | Case No.: 1:12-cv-0554 - JLT<br><br>ORDER DENYING PLAINTIFF'S SECOND MOTION TO COMPEL AND DENYING PLAINTIFF'S MOTION TO AMEND THE SCHEDULING ORDER<br><br>(Doc. 53) |

Wilson Gorrell ("Plaintiff") seeks to compel Defendants to respond to interrogatories and produce requested documents. (Doc. 53). Defendants National Toxicology Laboratories, Inc.; Thomas Sneath; and Hasmukh Shah (collectively, "Defendants") filed their opposition to the motion to compel on July 11, 2013 (Doc. 68), to which Plaintiff filed a reply on August 5, 2013. (Doc. 75).

**I.     Procedural History**

Plaintiff, an inmate currently incarcerated at Federal Satellite Low in Jesup, Georgia, initiated the action by filing a complaint against National Toxicology Laboratories, Inc. ("National Toxicology") and two of its employees on March 9, 2012. (Doc. 1). Plaintiff alleged medication he was taking caused his urine specimen to test positive for cannabinoids in a Gas Chromatography and Mass Spectrometry ("GC/MS") test performed at National Toxicology. (*Id.* at 1). However, Plaintiff claims that Defendants wrongfully failed to exclude his medication from the testing procedures. Plaintiff alleged Defendants "failed to adhere to strict and exacting requirements for testing before certifying a

1

specimen as positive for illicit drug use" and incorrectly informed Federal Satellite Low that his medication had no effect on the positive result. (*Id.* at 3). Plaintiff asserted Defendants were liable for several torts including negligence, intentional infliction of emotional distress, breach of contract, breach of fiduciary duty, defamation, libel, slander, and personal injury.

On April 10, 2012, the action was transferred from the Southern District of Georgia to the Eastern District of California (Doc. 3), thereby initiating the action before this Court. Because Plaintiff requested to proceed *in forma pauperis*, the Court screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915 to determine whether he stated cognizable claims on April 27, 2012. (Doc. 3). The Court found Plaintiff stated cognizable claims for negligence and defamation only, and he informed the Court that he wished to proceed on these clams on May 9, 2012. (Doc. 10). Defendants filed their answer to the complaint on August 6, 2012. (Doc. 18).

Plaintiff filed his first motion to compel discovery on February 11, 2013 (Doc. 33), which was granted in part on April 5, 2013. (Doc. 44). The Court ordered Defendants to produce a copy of the contract between the Bureau of Prisons ("BOP") and National Toxicology in response to Plaintiff's Request for Production of Documents No. 3. (*Id.* at 4, 15). In addition, the Court ordered Defendants to provide further responses to Plaintiffs' Interrogatory No. 7, including (1) how many of the 37 samples not submitted by the BOP were tested for THC and (2) the number of samples confirmed positive for THC. (*Id.* at 9, 15).

On June 19, 2013, Plaintiff filed the motion now pending before the Court, seeking to compel Defendants to comply with the Court's order to produce the entire contract between the BOP and National Toxicology, and for Defendants to provide further information regarding Interrogatory No. 7. (Doc. 53 at 1). Further, Plaintiff seeks to compel responses to his second set of discovery requests, served on February 4, 2013. (*Id.* at 2; Doc. 54 at 5).

**II. Discovery**

The scope and limitations of discovery are set forth by the Federal Rules of Civil Procedure. In relevant part, Rule 26(b) states:

> Unless otherwise limited by court order, parties may obtain discovery regarding any nonprivileged manner that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things . . . For good cause, the court may order discovery of any matter

relevant to the subject matter involved in the accident.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b).  Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.

      A.     Interrogatories

A party may propound interrogatories relating to any matter that may be inquired to under Rule 26(b).  Fed. R. Civ. P. 33(a).  A responding party is obligated to respond to the fullest extent possible, and any objections must be stated with specificity.  Fed. R. Civ. P. 33(b)(3)-(4).  In general, a responding party is not required "to conduct extensive research in order to answer an interrogatory, but a reasonable effort to respond must be made." *Haney v. Saldana*, 2010 U.S. Dist. LEXIS 93447, at *9 (E.D. Cal. Aug. 24, 2010) (citing *L.H. v. Schwarzenegger*, 2007 U.S. Dist. LEXIS 73753 (E.D. Cal. Sep. 21, 2007)).  Further, the responding party must supplement a response if the information sought is later obtained or the previous response requires a correction. Fed. R. Civ. P. 26(e)(1)(A).

Any grounds of an objection to an interrogatory must be stated "with specificity." Fed. R. Civ. P. 33(b)(4); *see also Nagele v. Electronic Data Systems Corp.*, 193 F.R.D. 94, 109 (W.D. N.Y. 2000) (objection that interrogatories were "burdensome" overruled for failure to "particularize" the basis for objection); *Mitchell v. AMTRAK*, 208 F.R.D. 455, 458 at n.4 (D.D.C. 2002) (objections must explain how an interrogatory is overbroad or unduly burdensome).

      B.     Requests for Production of Documents

A party may request documents "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1).  Similarly, a party may serve a request "to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property . . ." Fed. R. Civ. P. 34(a)(2).  A request is adequate if it describes items with "reasonable particularity;" specifies a reasonable time, place, and manner for the inspection; and specifies the form or forms in which electronic information can be produced.  Fed. R. Civ. P. 34(b).  Thus, a request is sufficiently clear if it "places the party upon 'reasonable notice of what is called for and what is not.'"  *Kidwiler v. Progressive Paloverde Ins. Co.*,

192 F.R.D. 193, 202 (N.D. W. Va. 2000) (quoting *Parsons v. Jefferson-Pilot Corp.*, 141 F.R.D. 408, 412 (M.D.N.C. 1992)); *see also* Schwarzer, Tashima & Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial* (Rev. #1 2011) Discovery, para. 11:1886 ("the apparent test is whether a respondent of average intelligence would know what items to produce").

The responding party must respond in writing and is obliged to produce all specified relevant and non-privileged documents, tangible things, or electronically stored information in its "possession, custody, or control" on the date specified. Fed. R. Civ. P. 34(a). Actual possession, custody or control is not required. "A party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document." *Soto v. City of Concord*, 162 F.R.D. 603, 620 (N.D. Cal. 1995). Such documents include documents under the control of the party's attorney. *Meeks v. Parson*, 2009 U.S. Dist. LEXIS 90283, 2009 WL 3303718 (E.D.Cal. September 18, 2009) (involving a subpoena to the CDCR); *Axler v. Scientific Ecology Group, Inc.*, 196 F.R.D. 210, 212 (D. Mass. 2000) (a "party must produce otherwise discoverable documents that are in his attorneys' possession, custody or control").

In the alternative, a party may state an objection to a request, including the reasons. Fed. R. Civ. P. 34(b)(2)(A)-(B). When a party resists discovery, he "has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Oakes v. Halvorsen Marine Ltd.*, 189 F.R.D 281, 283 (C.D. Cal. 1998) (citing *Nestle Food Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990)). Boilerplate objections to a request for a production are not sufficient. *Burlington Northern & Santa Fe Ry. v. United States Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005).

If a party "fails to respond that inspection will be permitted - or fails to permit inspection - as requested under Rule 34," the propounding party may make a motion to compel production of the documents. Fed. R. Civ. P. 37(a)(3)(B)(iv). Further, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4). "The moving party bears the burden of demonstrating 'actual and substantial prejudice' from the denial of discovery." *Hasan v. Johnson*, 2012 U.S. Dist. LEXIS 21578 at *5 (E.D. Cal. Apr. 9, 2012) (citing *Hallet v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).

## III. Discussion and Analysis

### A. Compliance with the Local Rules and the Court's Orders

As an initial matter, Defendants contend Plaintiff's second motion to compel discovery should be denied because Plaintiff failed to comply with the Court's order issued April 5, 2013, which provided that any discovery motions must comply with the Local Rules, the Court's Scheduling Order, and the Federal Rules of Civil Procedure. (Doc 68 at 2) (citing Doc. 44 at 2). Defendants argue Plaintiff failed to comply with the Local Rules of the Eastern District by (1) failing to submit "an affidavit, attested to under penalty of perjury, in support of his motion," and (2) failing to prepare a joint statement regarding the discovery dispute, and (3) failing to produce "[e]ach specific interrogatory and the objections thereon" as well as "the respective arguments and supporting authorities of the parties." (*Id.* at 2-3, citing Local Rules 230, 251) (emphasis omitted).[1]

In response, Plaintiff asserts he "made every effort to comply [with Local Rule 251], submitting evidence of his attempts to arrange the legal call from within the institution." (Doc. 76 at 1). Also, Plaintiff asserts he "submitted ample evidence of his prior attempts to resolve these discovery issues without the intervention of the Court. (*Id.*) Plaintiff filed an affidavit in support of his motion, signed under penalty of perjury on August 1, 2013. (Doc. 76 at 11).

#### 1. *Local Rule 230*

As Defendants observe, "Local Rule 230(h) requests factual contentions involved in pre-trial motions to be initially presented and heard upon affidavits." (Doc. 68 at 2). However, Local Rule 230 does not govern discovery disputes, and its provisions "shall not apply to motions dealing with discovery matters." Local Rule 251(f).

#### 2. *Failure to prepare meet and confer*

Local Rule 230 requires parties filing a motion pursuant to Fed. R. Civ. P. 26 through 37, to meet and confer, and set forth their positions in a joint statement. If a party puts forth a good faith effort but is unable "to secure the cooperation of counsel for the opposing party in arranging the

---

[1] Defendants also assert Plaintiff failed to produce "[e]ach specific interrogatory and the objections thereon" as well as "the respective arguments and supporting authorities of the parties." (Doc. 68 at 3). However, Plaintiff filed copies of the relevant discovery requests, as well as the responses made by Defendants, on June 19, 2013. (Doc. 54 at 31-70).

5

required conference, or in preparing and executing the required joint statement, . . . the moving party may file and serve an affidavit so stating." Local Rule 230(d). The affidavit should "set[] forth the nature and extent of [the party's] efforts to arrange the required conference or procure the required joint statement, the opposing counsel's responses or refusals to respond to those efforts, the issues to be determined at the hearing, and the moving party's contentions with regard to those issues . . ." *Id.*

Here, Plaintiff asserted he "made every effort to comply" with Local Rule 251. (Doc. 53 at 3). As a federal prisoner, Plaintiff "had to request the institution arrange a telephone call with Defendant's (sic) Counsel in order to confer directly." (*Id.*) Failing to receive permission for a telephone call, Plaintiff communicated in writing with Defendants' counsel, requesting further responses to his second set of discovery requests. (Doc. 54 at 16-22). Because Plaintiff put forth a good faith effort to comply with the Court's order to meet and confer and to file a joint statement, the Court will not drop the matter from calendar, and instead addresses the merits of Plaintiff's motion.

### B.     Request for Document Production No. 3

Plaintiff requested production of the contract between the BOP and National Toxicology, which the Court ordered be produced on April 5, 2013. (Doc. 53 at 1; Doc. 54 at 2). On August 5, 2013, Plaintiff informed the Court that he has obtained the full contract and "no further consideration or action of by the Court is requested or necessary regarding this part of the motion to compel." (Doc. 76 at 3). Thus, the Court finds the motion to compel as related to Plaintiff's Request for Document No. 3 is **WITHDRAWN**.

### C.     Special Interrogatory No. 7 (Set One)

Plaintiff requested National Toxicology "identify how many specimen's [sic] were tested on June 17, 2011 in the same batch as the Plaintiff's and how many test results were positive for cannabinoids THS Metabolics." (Doc. 33 at 44). National Toxicology responded:

> 55 samples were tested on June 17, 2011 in the same batch as the sample in question. Of those 55 samples, 18 samples were submitted by the Bureau of Prisons. Of those 18 samples, six were tested for THC and all six were positive. Twelve of the 18 Bureau of Prisons samples were tested for drugs other than THC, and as a result, responding party cannot state if those twelve samples were positive for THC as they were not tested for that substance.

(*Id.*) Plaintiff requested a further response to the interrogatory regarding the 37 samples that were not

submitted by the BOP.  (*Id.*)  Finding this information was relevant to Plaintiff's claims, the Court ordered National Toxicology identify how many of the samples not submitted by the BOP were tested for THC and the number confirmed positive for THC.  (Doc. 44 at 8-9).

In compliance with the Court's order, National Toxicology gave a supplemental response to Plaintiff's interrogatory, stating:

> After further analysis of the documents in this case, responding party believes that 43 samples were tested on June 17, 2011 in the same batch as the plaintiff's sample in question, not including the four (4) quality controls utilized in that same batch.  Of those 43 samples, 6 samples were submitted by the Bureau of Prisons.  Of the 37 samples not submitted by the Bureau of Prisons that were run in the same June 17, 2011 batch as plaintiff's sample in question, 37 were tested for THC. Of the 37 that were not submitted by the Bureau of Prisons and tested for THC in the same June 17, 2011 batch as plaintiff's sample in question, 35 were confirmed positive for THC metabolites pursuant to the specific cut-off levels set forth by the contract(s) governing the analysis of those 37 non-Bureau of Prison samples in question.

(Doc. 54 at 33; Doc. 68-3 at 4).  Now, Plaintiff seeks to compel National Toxicology to disclose "whether there was any THC in the[] two 'negative samples.'"  (Doc. 54 at 4).  Significantly, however, this information is beyond the scope of the original interrogatory, which only related to samples that *tested positive*.  Because the information requested would not be responsive to Special Interrogatory No. 7, Plaintiff's request to compel a further response is **DENIED**.

D. Request for Production of Documents No. 1 (Set Two)

Plaintiff requested "a copy of National Toxicology Laboratiries (sic) Inc. STANDARD OPERATING PROCEDURES MANUAL."  (Doc. 54 at 37; Doc. 68-4 at 3).  National Toxicology responded the request was "vague and ambiguous in its usage of the term 'STANDARD OPERATING PROCEDURES MANUAL' and that such term is not specifically defined despite its capitalization."  (Doc. 54 at 57).  In addition, National Toxicology objected it was "[o]verbroad as to any procedures applicable to the analysis of materials other than those tested for in plaintiff's sample in question."  (*Id.*)  Finally, National Toxicology objected on the grounds that Plaintiff "seeks trade secret and proprietary information" and the interrogatory speculates as to what the entity "may or may not have in existence."  (*Id.*)

In response, Plaintiff contends that "as a DHHS/SAMHSA-certified laboratory," National Toxicology was "required to maintain" a Standard Operating Procedures Manual.  (Doc. 76 at 4).  He

contends defendant Sneath "disclosed his position … in his curriculum vitae" as the individual "responsible for maintaining 'a complete, current SOP manual that is available for personnel in the drug testing laboratory, and followed by those personnel.'" *Id.* at 4-5.

Importantly, even if the term "Standard Operating Procedures Manual" was not vague and ambiguous, it appears that the "manual" Plaintiff seeks contains information that is not relevant to this action. According to Plaintiff, the manual must "describe, in detail, *all* laboratory operations" to "ensure[] that all specimens are tested using the same procedures and in a consistent manner." (Doc. 54 at 6) (emphasis added) (quoting *Federal Register*, Vol. 73, No. 228, Subpart K, Section 11.1). Thus, the manual contains information concerning laboratory operations beyond those used to test Plaintiff's urine sample. As such, the Request for Production No. 1 is overbroad and National Toxicology's objection is **SUSTAINED**. Plaintiff's motion to compel production of responsive documents is **DENIED**.

E.   Special Interrogatory No. 1

Plaintiff requested that "all Defendants" "explain what requirements, if any, the Bureau of Prisons; contract for drug testing imposes" as to several procedures. (Doc. 68-5 at 4). Plaintiff set forth sixteen sub-parts, some of which contained multiple inquiries. *Id.* Defendants assert that by their count this interrogatory contains "31 separate inquiries" (Doc. 68 at 6), and objected the interrogatory was "burdensome and oppressive and in contravention of the limit on interrogatories found within Federal Rule of Civil Procedure 33(a)(1)." (Doc. 68-7 at 3).

Pursuant to Rule 33, "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33(a)(1). Here, the parties have not stipulated to extend the limits set forth by the Federal Rules, and Plaintiff has not requested leave of the Court to do so. Accordingly, Plaintiff is limited to propounding 25 interrogatories to each defendant.

Significantly, by the Court's review of Plaintiff's various motions, Plaintiff exceeded the number of interrogatories served upon National Toxicology. (*See* Doc. 33 at 34-57). Accordingly, this defendant would not be required to respond to any of the interrogatories in Plaintiff's second set of written discovery. Further, prior to propounding the second set, Plaintiff had already served fifteen

interrogatories, including sub-parts, upon defendant Sneath and seventeen interrogatories upon defendant Shah. (*See* Doc. 33 at 16-17). Accordingly, these defendants would not be required to respond to all the sub-parts posed by Plaintiff in this interrogatory.

Moreover, the defendants' objections that this interrogatory is burdensome and calls for premature expert discovery are well-founded. As Defendants argue, Plaintiff possesses a copy of the contract and may identify the testing requirements. To the extent Plaintiff seeks *explanations* of the requirements and procedures provided in the contract, such information is within the province of an expert who possesses such specialized knowledge. *See* Fed. R. Evid. 702. Consequently, Plaintiff's motion to compel further responses to this interrogatory and its sub-parts is **DENIED**.

F.     Special Interrogatory Nos. 2, 3, 4, 8, and 14

As explained, Plaintiff has exceeded the number of interrogatories permitted under the Federal Rules of Civil Procedure. Accordingly, his motion to compel further responses to Interrogatories Nos. 2, 3, 4, 8, and 14 are **DENIED**.

G.     Motion to Amend the Scheduling Order

Plaintiff "requests the Court amend the Scheduling Order . . . to allow Defendants time to comply with these discovery requests." (Doc. 53 at 3). Because Defendants have not been ordered to provide further responses to Plaintiff's written discovery requests, no extensions of time are warranted.

**IV.     Conclusion and Order**

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1.     Plaintiff's second motion to compel discovery is **DENIED**; and

2.     Plaintiff's motion to amend the Court's Scheduling Order is **DENIED**.


IT IS SO ORDERED.

Dated:   **August 26, 2013**                    **/s/ Jennifer L. Thurston**
                                                                     UNITED STATES MAGISTRATE JUDGE